509 P.2d 1043

Ethel A. PATRICK, Executrix of the Estate of Lyle H. Patrick, Deceased, and Ethel A. Patrick, a widow, Appellants,

v.

ASSOCIATED DRYGOODS CORPORATION (GOLDWATER'S DIVISION) and Jerold Kaplan, Appellees.

No. 1 CA–CIV 1905.

Court of Appeals of Arizona, Division 1, Department A.

May 17, 1973.

Jennings, Strouss & Salmon, by Robert L. Johnson and M. Byron Lewis, Phoenix, for appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Jeffrey B. Smith, Phoenix, for appellee Associated Drygoods Corporation (Goldwater's Division).

Gust, Rosenfeld & Divelbess, by Richard A. Segal, Phoenix, for appellee Jerold Kaplan.

STEVENS, Judge.

This is the second of two cases. In the first case, Maricopa County Superior Court cause number C–206607, Associated Drygoods Corporation (Goldwater's Division), herein referred to as Associated, was the plaintiff. In that case after the issuance of an attachment of real property and a garnishment, Associated recovered a summary judgment against Lyle H. Patrick and Ethel Patrick his wife, including a foreclosure of the attachment. There was no appeal.

In the instant matter, the second case, the Patricks sued Associated and its attorney Jerold Kaplan claiming damages arising out of a claimed wrongful garnishment. Associated and Kaplan filed their separate motions for summary judgment which were granted and this appeal followed. Pending the appeal, Mr. Patrick died and his widow, in her official capacity as the executrix of his estate, was substituted as a party.

## THE FIRST CASE

Mr. and Mrs. Patrick and Mr. and Mrs. Jack R. Brasher owed separate debts to Hoyt Pinaire. A family relationship existed between the Pinaires, the Brashers, and the Patricks. Pinaire, who was an official in the Associated organization, assigned the claims of indebtedness to Associated. Associated, through the professional services of Kaplan, filed a suit against the Brashers and the Patricks and caused a writ of attachment of real property to issue, as well as two writs of garnishment. One of the writs of garnishment was addressed to the First National Bank of Arizona and resulted in the impoundment of the Patrick bank account.

Associated secured a summary judgment against the Patricks, including the foreclosure of the attachment lien. A special execution was issued. Thereafter the judgment was assigned to Edward Hoyt Pinaire who appears to be the same person as Hoyt Pinaire. Edward Hoyt Pinaire bid in the real property at the sheriff's sale and the property appears to have been redeemed before the execution of the sheriff's deed.

Based upon a series of affidavits and an attachment bond, all filed on the same date and within a short time span, the two writs of garnishment were issued, as well as the writ of attachment. There was no bond on garnishment.

A.R.S. § 12–1571 specifies the grounds for the issuance of a writ of garnishment. We quote this section in part:

"A. The clerk of the court or justice of the peace shall issue writs of garnishment, returnable to their respective courts, in the following cases:

"1. When an original attachment has been issued.

"2. When the plaintiff sues for a debt and makes affidavit that the debt is just, due and unpaid, and that defendant has not within his knowledge, property in his

8

possession within this state subject to execution sufficient to satisfy such debt, * * *."

These will be referred to as "A(1)" and "A(2)" garnishments. Under A.R.S. § 12–1572 no bond is required for an "A(1)" garnishment and a bond is required for an "A(2)" garnishment. A.R.S. § 12–1573 provides in part:

"Before issuance of a writ of garnishment, plaintiff or some one in his behalf shall make application in writing, under oath, stating the facts authorizing issuance of the writ, * * *."

Thus, it appears that there is a statutory requirement that a written application, under oath, must be filed before either an "A(1)" or an "A(2)" writ of garnishment can be issued. Upon complying with the statutory requirements, the garnishment shall "immediately issue". A.R.S. § 12–1574.

The affidavits in support of the writs of garnishment were made by Kaplan as the attorney for the plaintiff, Associated, and state in part:

"* * * that he is informed and believes that the defendant(s) are indebted to the plaintiff in the sum of the above demand and that said debt is just, due and unpaid; and the defendant(s) have not, within plaintiff's knowledge, property in their possession within the State of Arizona, subject to execution, sufficient to satisfy such debt, * * *."

In the first case the Patricks did not attempt to attack the validity of the writ of garnishment addressed to the bank. We are not here concerned with the outcome of the claims urged against the Brashers in the first case.

## THE SECOND CASE

Following the conclusion of the first case, the Patricks retained their present counsel and filed the instant action against Associated and Kaplan seeking damages for the wrongful garnishment basing their claim in large part upon the asserted falsi-

ty of the garnishment affidavit wherein it was affirmatively stated, as required by A.R.S. § 12–1571, subsec. A, par. 2 that, within the plaintiff's knowledge, the Patricks did not have property in their possession "within this state subject to execution, sufficient to satisfy such debt".

In the second case Associated and Kaplan prevailed in their separate motions for summary judgment. The trial court expressly took judicial notice of the entire file in the first case and of the Kaplan deposition taken in the second case, and these matters have been brought before us as part of the record in connection with this appeal. We do not, in this opinion, attempt to outline all of the potential fact questions appearing of record, nor do we in this opinion suggest that there is an absence of potential answers to these fact questions. Rule 56(c), Rules of Civil Procedure, 16 A.R.S., does not permit a summary judgment to be entered unless "there is no genuine issue as to any material fact" showing "that the moving party is entitled to judgment as a matter of law". There are numerous Arizona cases stating the same legal principle.

■ It is urged that since a writ of attachment issued, Associated could have secured an "A(1)" garnishment and that the affidavit on garnishment was surplusage. We do not agree. Garnishment is an extraordinary prejudgment remedy which is purely statutory and the statutes must be strictly complied with. While the fact situation confronting the Court in Andrew Brown Company v. Painters Warehouse, Inc., 11 Ariz.App. 571, 466 P.2d 790 (1970), differs from the fact situation in the instant case, the legal principles are applicable and we quote therefrom more extensively than is our custom.

"The question presented by this case is whether under Arizona law the truth of a garnisher's allegations in his affidavit of garnishment filed pursuant to A.R.S. Secs. 12–1571 and 12–1573 may be determined by the court, prior to trial of the principal action, upon a defendant's fil-

ing motions to quash the writs of garnishment issued upon those affidavits. * * *.

* * * * * *

"Defendants, who had in the interim filed an answer and counterclaim in the principal action, subsequently filed a motion to quash the writs of garnishment. The basis for defendants' motion was in essence that plaintiff had falsely stated in its affidavits that, *inter alia*, plaintiff had no knowledge of sufficient property in defendants' possession subject to execution out of which to satisfy the debt sued upon. * * *.

* * * * * *

"We note at the outset that garnishment was unknown to the common law; it has come into being as a statutory remedy. [Citations Omitted] Since garnishment is a creature of statute, garnishment proceedings are necessarily governed by the terms of those statutes. [Citations Omitted] Thus, courts may not allow garnishment proceedings to follow any course other than that charted by the legislature. * * *.

* * * * * *

"In our opinion it is clear that the legislature intended that the writ issue upon the filing of the affidavit of garnishment rather than upon proving the truth of the allegations made therein. * * *.

* * * * * *

"In light of our disposition of this matter, we believe it appropriate to indicate that the appellees are not without a remedy for any wrongful garnishment that may have occurred herein. Our Supreme Court has allowed a claim for wrongful garnishment to be asserted as a counterclaim, see De Wulf v. Bissell, 83 Ariz. 68, 316 P.2d 492 (1957), and, usually such a claim may be asserted in an independent action. In the trial of the claim for wrongful garnishment, the falsity of the allegations in the garnisher's affidavit may be shown. * * *."

San Fernando Motors, Inc. v. Fowler, 17 Ariz.App. 357, 498 P.2d 169 (1972), also stands for the principle that the garnishment statutes must be strictly construed and that strict compliance with the statutes is required in garnishment matters.

In the De Wulf case, cited in the Andrew Brown case, supra, there was a counterclaim for a wrongful garnishment. The Arizona Supreme Court entered its ruling upholding the right of recovery on the counterclaim. We do not find in De Wulf where the Arizona Supreme Court passed upon the question as to whether a claim for wrongful garnishment is a compulsory counterclaim or a permissive counterclaim. In United States Fidelity and Guaranty Co. v. Davis, 3 Ariz.App. 259, 413 P.2d 590 (1966), the suit for wrongful garnishment was a separate suit following the termination of the action wherein the wrongful garnishment was issued, which is the situation now before us. We hold that the presentation of a claim for wrongful garnishment is not a compulsory counterclaim under Rule 13(a), Rules of Civil Procedure, but is a permissible counterclaim under Rule 13(b).

As to the Kaplan participation, we note that in Rightmire v. Sweat, 83 Ariz. 2, 315 P.2d 659 (1957), the Arizona Supreme Court stated:

"* * * we disapprove the practice of an attorney verifying matters which are within the personal knowledge of others, * * *." 83 Ariz. at 4, 5, 315 P.2d at 661.

From the entire record and the totality of the circumstances presented, it appears to us that Associated through its assignor, who was a corporate official, knew a great deal about the real property which was attached and that there are fact questions as to whether the property on execution sale had a value "sufficient to satisfy [the Patricks'] debt". As before indicated in this opinion, this is not the only fact question which appears in the record but is adequate for the purposes of reversal.

This cause is reversed with instructions to vacate the summary judgment in favor of the two appellees and for such further proceedings as are not inconsistent with this opinion.

DONOFRIO, P. J., Department A, and OGG, J., concur.